IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Bettcher Industries<br><br>Plaintiff(s),<br><br>v.<br><br>Suhner Turbo Trim<br><br>Defendant(s). | Case No.  13 C 9000<br>Judge Virginia M. Kendall |

# ORDER

This Court grants the Defendants' motion, in part, and transfers this case to the Northern District of Georgia, Atlanta Division.

# STATEMENT

Plaintiff Bettcher Industries, Inc. filed suit against defendants Suhner Turbo Trim, LLC, Suhner Manufacturing, Inc., and Otto Suhner AG on December 17, 2013. Bettcher filed its Amended Complaint on March 28, 2014. Bettcher alleges infringement of U.S. Patent Nos. 6,769,184, 7,340,840, and 8,074,363. Although the Defendants moved to dismiss the Bettcher's claims (Dkt. No. 61), the parties have filed a joint stipulation regarding that motion and have asked this Court to deny the Defendants' motion to dismiss (Dkt. No. 65). Accordingly, this Court denies the Defendants' motion to dismiss (Dkt. No. 61) as moot. The Defendants have also moved under 28 U.S.C. § 1404(a) to transfer this case to the United States District Court for the Northern District of Georgia, Rome Division. For the following reasons, this Court grants the Defendants' motion, in part, and transfers this case to the Northern District of Georgia, Atlanta Division.

# BACKGROUND

"When deciding a motion to transfer venue, the court must accept as true all of plaintiff's well-pleaded facts in the complaint, unless they are contradicted by affidavits or other appropriate evidence from the defendant." *See Video & Sound Service, Inc. v. Intransa, Inc.*, 12 C 7322, 2013 WL 1568062 (N.D. Ill. Apr. 12, 2013). Accordingly, this Court takes the following facts from the Amended Complaint and from any affidavits submitted by the parties in support of their respective positions. Any factual findings are only for purposes of deciding this motion.

Bettcher is a corporation organized and operating under the laws of the State of Delaware, with its principal place of business in Birmingham, Ohio. (Dkt. No. 58 ¶1.) Bettcher manufactures and sells food processing equipment and hand tools including trimming knives. (Dkt. No. 58 ¶18.) Bettcher actively practices the inventions of the patents at issue, employs people in the United

States to engage in the research, development, manufacture, service, and sales of products that incorporate the inventions throughout the United States. (Dkt. No. 58 ¶1.) Bettcher practices the patented inventions in its Whizard® Trimmers, which are hand-held devices used for the commercial trimming of meat. *Id.*

Suhner Turbo is a Georgia limited liability company with its principal place of business in Rome, Georgia. (Dkt. No. 58 ¶2, Luthi Aff. ¶11.) Suhner Turbo competes directly with Bettcher in the food processing equipment market. (Dkt. No. 58 ¶19.) Suhner Turbo sells "Turbo Trim Knives," which is the product accused of infringement by Bettcher. (Dkt. 58, Complaint ¶19.) All of Suhner Turbo's employees reside and work in or around its headquarters in Rome, Georgia. (Luthi Aff. ¶¶12, 15.) All of Suhner Turbo's documents related to its business including sales and financial records are located in Rome, Georgia. (Luthi Aff. ¶15.) All design, development, and engineering relating to the Turbo Trim Knives occurred in Georgia or outside of the United States. (Luthi Aff. ¶16.) The persons most knowledgeable about the operation, marketing, design, development, testing, manufacturing, and sales of the Turbo Trim Knives reside in or near Rome, Georgia, or outside the United States. (Luthi Aff. ¶17.)

Suhner Manufacturing is a Georgia corporation with its principal place of business in Rome, Georgia. (Dkt. No. 58 ¶3.) All sales documents and financial records for Suhner Manufacturing are located in in the Northern District of Georgia. (Luthi Aff. ¶32.) Suhner Manufacturing has approximately 128 employees at its Rome, Georgia facility. (Luthi Aff. ¶26.) Suhner Manufacturing also has two sales offices, one of which is in Chicago, Illinois. This Chicago office has three employees who work there. (Luthi Aff. ¶27.) According to Luthi, employees in these two sales offices do not perform any functions related to operations, manufacturing, design, finance, or marketing. (Luthi Aff. ¶28.) But the job posting for the manager of the Chicago office stated that the manager would be responsible for promotion and sales of "electric, pneumatic and flexible shaft power tools." (Dkt. No. 58 ¶11.)

Paul Luthi is the president of both Suhner Manufacturing and Suhner Turbo. (Luthi Aff. ¶2.) Luthi not only conceived and developed the idea of entering the rotary knife business in the United States for the Defendants, (Pl.'s Resp. at 3; Luthi Dep. at 34,58, 61, 71-72, 80), but also led the product development team (Luthi Aff. ¶3). When developing the product, Luthi worked either in Rome, Georgia or outside the United States. (Luthi Aff. ¶¶ 17, 20, 26, 28, 34.)

Otto Suhner is a Swiss corporation with its principal place of business in Switzerland; it has no offices or employees in the United States. (Dkt. No. 58, Complaint ¶4, Luthi Aff. ¶33.) Otto Suhner manufactures the Turbo Trim Knives at its facilities in Switzerland and sells them to another Swiss company, Suhner Abrasive Expert AG. (Luthi Aff. ¶4, 5.) Suhner Abrasive owns 70% of Suhner Turbo and is the supplier and marketing company for Suhner Turbo. (Luthi Dep. at 27:19-28:10, Luthi Aff. ¶9.) Suhner Turbo leases inventory space in Georgia from Suhner Manufacturing, which owns the remaining 30% of Suhner Turbo. (Luthi Aff. ¶¶8-9.)

Luthi reports that sales of Turbo Trim Knives began in March 2009 and continued through August 2013, producing sales of approximately $546,465 worth of blades and housings for the Turbo Trim Knives in the United States. (Luthi Aff. ¶37.) During that period, Turbo Trim Knives sold less than $2,000 worth of the accused product in Illinois. (Luthi Aff. ¶38.)

## **LEGAL STANDARD**

Section 1404 of Title 28 of the United States Code provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In patent cases, district courts should apply the law of the regional circuit when deciding a motion to transfer under Section 1404. *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed Cir. 2011). The moving party has the burden of establishing that venue is proper and must make a prima facie showing to that effect. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). Transfer is appropriate if: (1) venue is proper in the transferor and transferee courts; (2) transfer serves the convenience of the parties and witnesses; and (3) transfer promotes the interest of justice. *See FUL Inc. v. Unified School Dist. No. 204*, 839 F.Supp. 1307, 1310 (N.D. Ill. 1993). District courts have broad discretion to grant or deny a motion to transfer. *See Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989). Courts analyzing the convenience of a transfer generally consider the "availability of and access to witnesses, and each party's access to and distance from resources in each forum." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Additionally, courts consider the likely speed to trial, each court's familiarity with the relevant law, the desirability of resolving the controversies in each locale, and the relationship of the community to the controversy. *Id.*

## **DISCUSSION**

### A.  Venue is proper here and in the Northern District of Georgia.

The parties agree that venue is proper in this District. And, at least for purposes of this case, Bettcher does not dispute that venue is proper in the Northern District of Georgia. Therefore, the Defendants have shown that venue is proper in the transferor and transferee courts.

### B.  The Defendants have shown that the Northern District of Georgia serves the convenience of the parties and witnesses better than this District.

When analyzing the convenience of the parties and witnesses courts weigh relevant private interest factors such as the plaintiff's choice of forum, the situs of material events, the relative ease of access to sources of proof, the convenience of the parties, and the convenience of the witnesses. *See*, *e.g.*, *De Falco v. Vibram USA, Inc.*, 12 C 7238, 2013 WL 1122825, at *10 (N.D. Ill. Mar. 18, 2013). Here, this Court must give some weight to Bettcher's choice of forum. *See Federal Deposit Insurance Corp. v. Citizens Bank & Trust Co. of Park Ridge, Ill.*, 592 F.2d 364, 368 (7th Cir. 1979). But this Court gives Bettcher's choice of forum less deference because it is not his home forum. *Cf. Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.*, 549 U.S. 422, 430, 127 S.Ct. 1184, 1191 (2007) (plaintiff's choice of forum "applies with less force" in forum non conveniens context where the forum is not plaintiff's home forum). This is particularly true where the plaintiff's choice of forum has a relatively weak connection to the facts that give rise to the claim. *See MPH Technologies OY v. Zyxel Communications Corp.*, 10-CV-684, 2010 WL 2836734, *2 (N.D. Ill. July 16, 2010). Notwithstanding these considerations, Bettcher's choice of forum nonetheless weighs against transfer.

Because this is a patent infringement case, the situs of material events does not weigh in favor or against transfer. *See Technology Licensing Corp. v. Harris Corp.*, 9 C 820, 2012 WL 1298611 (N.D. Ill. Apr. 16, 2012 ("[T]he situs of material events in the case, is largely irrelevant in patent cases, as 'the location in which the allegedly infringing product is designed, produced, shipped, sold or purchased does not weigh in favor of either party.' ") (quoting *MPH Technologies*, 2010 WL 2836734 at *3). Here, the Defendants suggest that less than one percent of sales of the accused product have occurred in this District. As discussed above, this establishes a weak connection to this District. The Defendants also claim that the design and development of the accused product, as well as the coordination of the marketing and sales of the accused product, took place in the Northern District of Georgia. Even if true, the Defendants have not shown that these activities qualify as "material events" that favor transfer. A patent infringement claim requires the patentee to show that the accused device contains each limitation of the asserted claim or an equivalent of each limitation. *See Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1330 (Fed. Cir. 2013). Though the design and development of the accused product may prove relevant to issues raised later in this case, the only issue currently before this Court is whether the accused product, that is, the product actually sold or offered for sale, infringes the asserted claims. As a result, the Defendants have not shown that the activities in the Northern District of Georgia favor transfer. Combined with the weak connection Bettcher's claims have with this District, the events identified by the parties neither favor nor weigh against transfer.

Another factor that neither favors nor weighs against transfer is the location of documents and sources of proof. Even if all of the Defendants' documents were located outside of this District, the Defendants have not explained why the physical location of the documents hinders access to those documents. There is no indication that the Defendants cannot copy the documents or process them electronically. This renders this factor neutral. *See Leuders v. 3M Co.*, No. 08 C 2457, 2008 WL 2705444, at *3, (N.D. Ill. July 9, 2008) ("When documents are easily transferable, access to proof is a neutral factor.").

The convenience to the parties weighs in favor of transfer. Suhner Turbo's headquarters are in Rome, Georgia. The persons most knowledgeable about the operation, marketing, design, development, testing, manufacturing, and sales of the Turbo Trim Knives reside in or near Rome, Georgia or outside the United States. Transfer to the Northern District of Georgia would be more convenient for these individuals. The Defendants also claim that the Northern District of Georgia would be more convenient for its foreign employees, who would be able to work from Suhner Turbo's headquarters should they have to come to the United States in connection with this case. On the other hand, Bettcher's headquarters is in Birmingham, Ohio. Its witnesses would have to travel either to this District or to the Northern District of Georgia for trial. Although this District is roughly three hundred miles closer to Bettcher's headquarters than the Northern District of Georgia, Bettcher's witnesses would have to travel more than three hundred miles to either district for trial. That said, it would be more convenient for Bettcher's witnesses to travel to Atlanta, Georgia than it would be to travel to Rome, Georgia. The Atlanta Division of the Northern District of Georgia is considerably closer to a major airport than the Rome Division.

The convenience to other witnesses, however, is neutral. When determining whether a particular venue is more convenient for the witnesses, a court must consider the number of witnesses in each forum; the nature, quality, and importance of the witnesses' testimony with respect to the issues of the case; the expense of transportation and the length of time the witnesses will be

absent from their jobs; and whether the witnesses can be compelled to testify. *See MPH Technologies*, 2010 WL 2836734 at *2. The convenience of non-party witnesses is substantially more important than the convenience of party witnesses because the latter are within the party's control. *Id*. Potential non-party witnesses identified by the parties include four customers who purchased Turbo Trim Knives; one resides in Illinois and three in Georgia. (Luthi Dep. at 97-100.) Bettcher also identified its customer in Monmouth, Illinois, as a potential witness. Significantly, neither party has identified a non-party witness who is unable or unwilling to travel to either district for trial. Nor has any party explained how or why any non-party witness's testimony is essential to their case. Consequently, there are no grounds in the record before this Court that warrant a finding as to whether a particular forum is more convenient for non-party witnesses. Based on what the parties have presented, this factor neither favors nor weighs against transfer.

On balance, the convenience to the parties outweighs Bettcher's choice of a forum. This is not Bettcher's home forum and, with less than one percent of the sales of the accused product having occurred here, there is little reason to force the Defendants to travel to this District when it is more convenient for them to litigate this case in the Northern District of Georgia where two of the Defendants have significant operations. Further, transfer would not impose a significant burden on the Bettcher, as major airports serve both districts and the difference in travel between the two districts is less than two hours by airplane. Therefore, this Court finds that transfer to the Northern District of Georgia serves the convenience of the parties and the witnesses.

### C. The Defendants have shown the interests of justice favor transfer.

Generally, the interests of justice inquiry under § 1404(a) in federal question cases concerns the efficient function of the courts. *See Coffey*, 796 F.2d at 221. Factors relevant to the efficient administration of the court system include a court's familiarity with the applicable law, the speed at which the case may proceed to trial, and the desirability of resolving a controversy in a given locale. *De Falco*, 2013 WL 1122825 at *10. Here, this is a patent infringement case that judges in either district are well-equipped to handle. According to recent Federal Court Management Statistics, the median time to trial in this District is approximately ten months longer than in the Northern District of Georgia. Available at http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics.aspx (last visited June 27,2014). Although these statistics are not limited to patent cases in these districts, they suggest that the parties will make it to trial sooner in the Northern District of Georgia. This favors transfer to the Northern District of Georgia. The Defendants' presence in the Northern District of Georgia also favors transfer, given the desirability of resolving a controversy in a location with ties to the claims. The only district in which either the parties or the claims have any significant relationship with the community is the Northern District of Georgia, where two of the three defendants have their principal places of business and where most of those Defendants' employees live and work. Therefore, this Court finds that the interests of justice favor transfer to the Northern District of Georgia.

## **CONCLUSION**

For the foregoing reasons, this Court grants the Defendants' motion, in part, and transfers this case to the Northern District of Georgia, Atlanta Division.

Date:  June 30, 2014

                                              Virginia M. Kendall
                                              United States District Judge